IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TIRON S. MITCHELL, | ) |
| Movant, | ) |
| vs. | ) No. 1:20-CV-00205 SNLJ |
| UNITED STATES OF AMERICA, | ) No. 1:18-CR-00138 SNLJ |
| | ) (related criminal case number) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Tiron S. Mitchell, a person in federal custody. On March 26, 2019, Mitchell plead guilty before this Court to the offense of Possession with Intent to Distribute Fifty Grams or More of Methamphetamine. On September 24, 2019, this Court sentenced Mitchell to the Bureau of Prisons for a term of 180 months. Mitchell's § 2255 motion, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## BACKGROUND

### Facts

On May 16, 2018, law enforcement officers used a confidential informant (CI) to conduct a controlled purchase of methamphetamine from petitioner Tiron S. Mitchell. Doc. # 51 (Presentence Investigation Report, or "PSR") ¶ 13. Officers met with the CI prior to the transaction and provided him/her with cash and a video-recording device. *Id.* The CI then made arrangements to meet Mitchell at the Country Heart Inn motel in Sikeston, Missouri. Upon arrival, the CI met with Mitchell in person and gave him cash in exchange for 3.4 grams of methamphetamine. *Id.* The CI met with officers immediately following the transaction and

1

turned over the methamphetamine. The transaction was successfully video-recorded. *Id.*

As part of their continuing narcotics investigation, officers later obtained a search warrant for a room at the Country Heart Inn. The warrant was executed on July 11, 2018. PSR ¶ 14. Mitchell was present inside the motel room at the time along with three other individuals. *Id.* Officers discovered 132.16 grams of methamphetamine inside a shoebox that was lying on the bed. *Id.* A receipt for vehicle parts bearing Mitchell's name was found inside that same shoebox. *Id.* Additional controlled substances and a digital scale with methamphetamine residue were also found in the room. *Id.* A search incident to arrest revealed Mitchell had $2064.00 in his wallet, despite the fact he had been unemployed for at least the past two years. PSR ¶¶ 14, 74.

## **Procedural History**

A federal grand jury in the Eastern District of Missouri subsequently returned a two-count Indictment charging Mitchell with one count of distributing methamphetamine (for the video-recorded controlled purchase on May 18, 2018) and one count of possession with intent to distribute fifty grams of methamphetamine (based on the July 11, 2018 search warrant). Doc. # 1, 2. Assistant Federal Public Defender (AFPD) Michael Skrien was appointed to represent Mitchell in the case. As part of a negotiated plea agreement, the government agreed to dismiss Count I (the video-recorded sale of methamphetamine) in exchange for Mitchell's guilty plea to Count II (possession with intent to distribute more than fifty grams of methamphetamine recovered during July 11, 2018 search warrant). Doc. # 37 (Plea Agreement). The written agreement included a factual basis supporting the charge, which stated as follows:

> On July 11, 2018, law enforcement officials executed a search warrant for a particular room at a motel in Sikeston, Missouri. The defendant, Tiron S. Mitchell, was present inside the room at the time. Officers discovered approximately 140 grams of methamphetamine inside a shoe box that was lying on the bed. Officers also found an opened box of plastic bags and

> paperwork bearing Mitchell's name inside that same shoe box. A digital scale with a powdery residue was also found in the room. Chemical analysis later confirmed the substance found in the shoe box was approximately 140 grams of a mixture or substance containing methamphetamine.

*Id.* at 3. The agreement further reflected that Mitchell explicitly admitted that he "possessed more than fifty (50) grams of a mixture or substance containing methamphetamine" and that he "intended to distribute some or all of [it] to another person or persons." *Id.*

With respect to sentencing guidelines calculations, the parties did not reach an agreement regarding the total offense level or sentencing range because of the possibility that Mitchell would qualify as a career offender pursuant to U.S.S.G. § 4B1.1. *Id.* at 4. Mitchell expressly retained the right to appeal any and all sentencing issues, including whether he qualified as a career offender. *Id.* at 6. As to the non-sentencing issues, the agreement provided that "the parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea." *Id.* at 5. Mitchell further agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding . . . except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id.* at 6.

The agreement further stated, in plain terms, that Mitchell was waiving all of his trial rights:

> In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further

3

> understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.
>
> The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.
>
> The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

*Id.* at 8.

The voluntary nature of the guilty plea was covered on page 9. Specifically, the agreement confirmed Mitchell "acknowledges having voluntarily entered into both the plea agreement and guilty plea" and "further acknowledges that [his] guilty plea is made of [his] own free will and that [he] is, in fact, guilty." *Id.* Finally, Mitchell acknowledged he understood there would be no right to withdraw his plea. *Id.* at 10.

On March 26, 2019, Mitchell appeared before this Court with his attorney and entered a guilty plea to Count II of the Indictment pursuant to the written guilty plea agreement, which Mitchell signed in open court. Doc. # 73 (Transcript of Guilty Plea Hearing, hereafter "Guilty Plea Tr."). At the outset of the plea hearing, this Court specifically addressed Mitchell's competency to proceed, including an inquiry into the effects of any medications he was taking:

> COURT:   Have you had any drugs, medication, or alcohol in the last 24 hours?
>
> MITCHELL: Yes.

4

COURT:     What?

MITCHELL: I take medication.

COURT:     For what?

MITCHELL: I had surgery.

COUNSEL:   He had bypass surgery in January, and he's got some really rare medications.

COURT:     Really?

COUNSEL:   They're unusual, ones that I'm not familiar with.

COURT:     You're taking medications for heart bypass surgery –

MITCHELL: Yes.

COURT:     -- that you had in January; right?

MITCHELL: Yes. I also saw the doctor yesterday.

COURT:     So -- and are the medications working properly?

MITCHELL: Yes.

COURT:     The reason I'm asking these questions is I have to make sure that there's nothing about your mental or physical condition or health that is in any way affecting your decision to enter this plea of guilty. Do you understand what I mean?

MITCHELL: Yes.

COURT:     So can you assure me that's the case, that is correct then there's nothing about these conditions that are affecting your plea; is that right?

MITCHELL: That's right.

COURT:     But I do want to ask you further about it. Other than your heart surgery do you have any kinds of injuries, ailments, infirmities of any kind that require a physician, a psychiatrist or any other kind of doctor?

5

> MITCHELL: I did – it wasn't a – it was a heart – an artery bypass. They just cut me from here and put stents in both my legs and my foot.
>
> COURT: Okay. Yeah. Anything other than that?
>
> MITCHELL: Oh, okay. No, sir. No, sir.
>
> COURT: Okay. So the surgery was successful?
>
> MITCHELL: Yes.
>
> COURT: Okay. I take it then that – and you're under the care of a physician?
>
> MITCHELL: Yes.
>
> \*\*\*
>
> COURT: You're taking these medications, and they're working properly, right?
>
> MITCHELL: Yes.
>
> COURT: So, based on your answers, I take it that your mind is clear, and you're feeling well, and you're ready to proceed; is that right?
>
> MITCHELL: Yes.

Guilty Plea Tr. at 3-5. After confirming that the medications were not interfering with Mitchell's ability to proceed, this Court explored whether Mitchell was satisfied with his attorney's representation:

> COURT: So with that in mind I'll ask you are you satisfied with the way your lawyer has handled your case?
>
> MITCHELL: Yes.
>
> COURT: Has he investigated the case to your satisfaction?
>
> MITCHELL: Yes.

6

> COURT: Has he done everything you've asked him to do?
>
> MITCHELL: Yes.
>
> COURT: No gripes or complaints whatsoever?
>
> MITCHELL: No.

*Id.* at 6. This Court then thoroughly reviewed all of Mitchell's trial rights, including his right to testify in his own defense and his right to call any witnesses he believed might be beneficial to his side. *Id.* at 7. Mitchell reaffirmed that he had gone over the written guilty plea in detail with his attorney and fully understood that he was waiving his right to trial.

During the hearing, the government summarized the facts it would prove beyond a reasonable doubt if the case proceeded to trial. *Id.* at 12. This Court then engaged in the following colloquy:

> COURT: Have you heard the statements from the prosecutor?
>
> MITCHELL: Yes.
>
> COURT: Is everything he said true and correct?
> MITCHELL: Yes.
>
> COURT: Do you admit that you did all those acts he described.
>
> MITCHELL: Yes.
>
> COURT: No question about it, is there?
>
> MITCHELL: No.
>
> COURT: I'll go through the elements with you specifically on page two at the bottom. Do you admit that you knowingly and intentionally possessed more than 50 grams of methamphetamine and that you intended to distribute some or all of it to another person or persons? Do you admit all that?
>
> MITCHELL: Yes.

7

> COURT: Are you pleading guilty then because you are guilty?
>
> MITCHELL: Yes.
>
> COURT: Based on your sworn testimony, the Court finds that you are competent to enter the plea of guilty, further that you're admitting the essential elements of the crime charges; therefore, I find you guilty as charged.

*Id.* at 12-13. This Court then formally accepted the plea agreement and ordered the Probation Office to complete a presentence investigation report prior to the sentencing hearing, which was scheduled for June 25, 2019. Although this was a mandatory detention case, the government advised the Court that it was not opposed to Mitchell remaining free pending sentencing because of medical issues related to his bypass surgery. *Id.* at 14. This Court allowed Mitchell to do so.

Prior to sentencing, the Probation Office filed the PSR. As part of the guidelines calculations, the PSR outlined Mitchell's extensive criminal history consisting of ten separate felony convictions, various misdemeanor convictions, and a total of 26 criminal history points. PSR ¶¶ 33-52. Among other things, Mitchell had been convicted of felony assault for repeatedly striking his girlfriend with a hammer. PSR ¶ 33. Mitchell also had two separate convictions for selling controlled substances, which both qualified as career offender predicate offenses. *See* PSR ¶ 40 (2006 conviction for selling crack cocaine); PSR ¶ 47 (2016 conviction for selling methamphetamine). As a career offender, Mitchell's offense level was 34 under U.S.S.G. § 4B1.1(b)(2). After applying a three-level reduction for acceptance of responsibility, the total offense level was 31. With a criminal history category VI,[1] the advisory guideline imprisonment range was initially determined to be 188-235 months.

---

[1] A career offender automatically falls in category VI. With 26 criminal history points, however, Mitchell would have fallen in category VI regardless of his designation as a career offender.

On June 25, 2019, AFPD Skrien appeared in court for Mitchell's sentencing hearing. Unfortunately, Mitchell did not. Having failed to appear for sentencing, this Court issued a warrant for Mitchell's arrest. Mitchell remained a fugitive for three months before he was finally arrested and taken into custody. Due to Mitchell's failure to appear for his sentencing hearing, the Probation Office made revisions to the PSR. Finding that Mitchell's post-plea conduct was inconsistent with acceptance of responsibility, the revised PSR recommended that a three-level reduction should not be applied. PSR ¶¶ 29-30. With a total offense level of 34, the recommended advisory guideline imprisonment range was now 262-327 months. PSR ¶ 81.

Mitchell was brought before this Court for his sentencing hearing on September 24, 2019, the day after he was apprehended. Before going on the record, AFPD Skrien requested - and the government agreed - to grant Mitchell a two-level reduction for acceptance of responsibility. At the outset of the sentencing hearing, the parties announced that this agreement lowered Mitchell's total offense level from 34 to 32. Doc. # 75 (Transcript of Sentencing Hearing, hereafter "Sent. Tr.") at 3. The guideline range agreed upon by the parties, then, was 210-262 months. *Id.* at 3-4. This Court accepted the agreement and formally adopted these guidelines calculations. *Id.*

During the hearing, this Court specifically asked Mitchell if he had gone over the PSR in detail with AFPD Skrien. *Id.* at 2. Mitchell confirmed that he had and that he had no objections to the factual statements set forth therein. *Id.* at 2-3. The Court then heard recommendations from the parties regarding an appropriate sentence. Reviewing the facts of the instant offense, the government reiterated that Mitchell "was caught with 130 grams of methamphetamine" after he sold methamphetamine to an informant. *Id.* at 5. Based on the nature of the offense and Mitchell's extensive criminal history, the government suggested that a sentence within the guideline range of 210-262 months was appropriate. *Id.* at 4-5. AFPD Skrien then addressed the

Court on Mitchell's behalf, urging the Court to consider a downward variance. *Id.* at 5-7. AFPD Skrien argued "that even at the low end of the new range [210 months] that still results in a sentence that's greater than necessary." *Id.* at 5. Instead, AFPD Skrien maintained a sentence between 12 and 15 years would be more appropriate. *Id.* The Court then afforded Mitchell an opportunity to speak on his own behalf. Mitchell stated, "Your Honor, I know I messed up about not coming to sentencing, but, man, that's a lot of time. *** And, like I told Mr. Skrien, I'll take the 15 just to get back out and see my kids." *Id.* at 7. Mitchell later added "I'd rather if you could give me a 12[.]" *Id.* at 8. At no point did Mitchell dispute that he was actually guilty of the instant offense, nor did he insinuate that his plea was somehow involuntary.

Upon full consideration of the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), this Court imposed a sentence of 180 months imprisonment – a sentence 30 months below the bottom of the guideline range. Mitchell did not file a direct appeal.

Mitchell has now filed a motion under 28 U.S.C. § 2255, asserting AFPD Skrien rendered ineffective assistance of counsel. Doc. #66 (Motion to Vacate). In his motion, Mitchell maintains he "believed he had a defense to the charges" because there were several other persons present in the motel room when the search warrant was executed and the methamphetamine was not found on his person. *Id.* at 4. According to Mitchell, he "wanted to go to trial but counsel told [him he] would be found guilty[.]" *Id.* Mitchell now claims he was "under the influence and effects of powerful pain meds" when he pled guilty, which caused him to follow AFPD Skrien's "bad advice." *Id.* Mitchell proclaims his guilty plea was involuntary because he "was heavily sedated on pain meds and [] didn't know the law[.]" *Id.* at 5. Mitchell's meritless claim is refuted by the record.

### STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

10

"A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). The Supreme Court of the United States set forth the standard to apply in such cases in *Strickland v. Washington*, 466 U.S. 668 (1984). A Movant must plead and prove two related but independent issues. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.*

Regarding the first prong of the *Strickland* test, the proper standard for attorney performance is that of reasonably effective assistance. As the Supreme Court explained, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Recognizing the complexity and variety of issues that defense counsel must confront and address in any given case, the Supreme Court refused to adopt a standard that would implement an exhaustive set of detailed guidelines to evaluate attorney performance. Instead, the proper measure of attorney performance is simply reasonableness under prevailing professional norms. *Id.* The Supreme Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

> counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (citations and internal quotation marks omitted). The Supreme Court further instructed that a reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

The second prong of the *Strickland* test requires a Movant to prove that he or she was prejudiced by counsel's deficient performance. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* at 691. The Supreme Court observed "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Thus, it is simply not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. And where, as here, the defendant pleaded guilty, the defendant must establish that he would have insisted on going to trial. Indeed, it is well-settled that "[i]n order to satisfy the prejudice prong of the *Strickland* test in the guilty plea context, a defendant must establish a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness." *Watson v. United States*, 682 F.3d 740, 745 (8th Cir. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In evaluating an ineffectiveness claim, a reviewing court is not required to address both

12

prongs of the *Strickland* test if the defendant makes an insufficient showing on one. As the Supreme Court instructed, a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Id.* at 697. The Eighth Circuit has described the two-fold *Strickland* test as "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000). Accordingly, if a reviewing court determines the alleged errors would have had no impact on the result of the proceeding, the claim of ineffectiveness must fail.

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027 (quoting *Strickland*, 466 U.S. at 688). Counsel's challenged conduct is viewed as of the time of his representation and courts will "avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. Again, a reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

### Need for Evidentiary Hearing and Burden of Proof

A motion filed under 28 U.S.C. § 2255 should be denied without an evidentiary hearing

13

when the court records conclusively show that the movant is not entitled to relief. The statute provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

*Id*. Additionally, Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, would entitle the movant to relief. *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, No. 1:16-CV-101 SNLJ, 2016 WL 5941929 (E.D. Mo. Oct. 13, 2016) (citation omitted); *see also Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and the records of the case. *Id*. at 225-26; *see also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engehlen v. United*

*States*, 68 F.3d 238, 240 (8th Cir. 1995).

## MITCHELL'S MOTION WILL BE DENIED WITHOUT AN EVIDENTIARY HEARING

A Section 2255 movant is entitled to relief when his sentence "was imposed in violation of the Constitution or laws of the United States." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011). The movant must show that the claimed error amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333 (1974). Where a movant has pled guilty, collateral review is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). To be valid, a guilty plea must be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). The plea must also be made with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The voluntariness of a plea can only be determined by "considering all of the relevant circumstances surrounding it." *Id.* at 749. When a movant claims his guilty plea was not knowing and voluntary due to ineffective assistance, he "must overcome strong presumptions of counsel's competence and of the voluntariness of the guilty plea based on his representations at the plea hearing." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). Moreover, a movant "must establish a reasonable probability that he would have exercised his right to trial but for counsel's ineffectiveness." *Watson v. United States*, 682 F.3d 740, 745 (8th Cir. 2012). *See also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (to demonstrate prejudice a movant must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.").

Mitchell's entire claim is based on his assertion that he "was heavily sedated on pain meds"

at the time of his guilty plea. Motion to Vacate at 5. This claim is completely refuted by the record. Importantly, this Court was able to make first-hand observations of Mitchell during the guilty plea hearing. This Court specifically addressed Mitchell's competency to proceed, including the effect of any medications he was taking. Guilty Plea Tr. at 3-5. During a thorough inquiry, this Court explicitly asked Mitchell a series of questions related to his mental and physical condition. *Id.* Mitchell repeatedly confirmed that his medications were not interfering with his ability to understand the nature of his guilty plea and its attendant consequences. *Id.* A review of the guilty plea hearing transcript conclusively demonstrates Mitchell is not entitled to relief.

Nor can Mitchell show he was prejudiced. Looking at the record in its entirety, Mitchell simply cannot establish that he would have insisted on going to trial. In hindsight, Mitchell points to several facts he now believes might have resulted in his acquittal. Mitchell complains, for example, that the methamphetamine was not recovered from his person and that there were other people with him in the motel room who were not charged. Motion to Vacate at 4. Mitchell then makes a broad assertion that "the contraband was not connected to [him]." *Id.* at 5. The complete record of the case, however, refutes this claim.

For one thing, Mitchell entirely ignores the fact that he was captured on video selling methamphetamine to a confidential informant at the motel less than two months before the search warrant was executed. PSR ¶ 13. As part of the negotiated plea agreement, this count was dismissed. Mitchell also fails to mention that a receipt bearing his name was found in the shoebox along with the 132.16 grams of methamphetamine – a fact that obviously connected him to the contraband. PSR ¶ 14. Nor does he attempt to offer an explanation as to how he had over $2000.00 in cash in his pocket when he had been without legitimate employment for at least the past two years. PSR ¶¶ 14, 74. Additionally, Mitchell at that time was on parole following a

2016 state conviction for selling methamphetamine. PSR ¶ 47. Such evidence would have likely been admissible under Rule 404(b) of the Federal Rules of Evidence to demonstrate knowledge and intent. In summary, there is simply no reasonable likelihood Mitchell would have insisted on proceeding to trial on the two counts against him.

## CONCLUSION

For the foregoing reasons, this Court denies Mitchell's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Barnes has not made a substantial showing of the denial of a federal constitutional right.


Dated this 8th day of April, 2021.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE